**Mary Frances ERSPAN, Plaintiff-Appellee Cross-Appellant,**

v.

**Lloyd J. BADGETT, Defendant-Appellant Cross-Appellee.**

No. 79–4011.

United States Court of Appeals, Fifth Circuit.*

Unit A

Oct. 9, 1981.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Stephen F. Hefner, Sherman, Tex., for defendant-appellant cross-appellee.

** District Judge in the Western District of Louisiana, sitting by designation.

Colbert N. Coldwell, El Paso, Tex., for plaintiff-appellee cross-appellant.

ON SUGGESTION FOR REHEARING EN BANC

(Opinion June 10, 1981, 5th Cir., 1981, 647 F.2d 550.)

Before AINSWORTH and SAM D. JOHNSON, Circuit Judges, and HUNTER **, District Judge.

PER CURIAM:

Following the issuance of the panel opinion in this case, defendant Badgett filed a Suggestion for Rehearing En Banc, in which he now argues, *inter alia*, that under the authority of the Supreme Court's decision in *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), in which the Court held that Railroad Retirement Act benefits are not divisible as community property in state court divorce decrees, federal law likewise should be held to preclude state courts from dividing military retirement benefits in divorce proceedings pursuant to state community property laws. In his Suggestion, defendant also notes that the Supreme Court agreed to decide this precise question in *McCarty v. McCarty*, argued 49 U.S.L.W. 3661 (March 2, 1981). Defendant asserts that "[t]o the extent that the divorce decree conflicts with the decision of the Supreme Court of the United States in *Hisquierdo*, . . . it should be reversed."

Two days after defendant filed his Suggestion in the case *sub judice*, the Supreme Court announced its opinion in *McCarty v. McCarty*, —— U.S. ——, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), in which the Court held that military retirement benefits, like railroad retirement benefits, are not divisible in state court decrees as community property, and accordingly reversed the judgment of the California Court

of Appeal, which had affirmed the award.[1] Unlike both *McCarty* and *Hisquierdo*, however, which were direct appeals from state court divorce decrees, the case *sub judice* is not: there is no divorce decree before this Court. Moreover, notwithstanding defendant's invitation for this Court to "reverse" the February 21, 1963 judgment of the 65th Judicial District Court of El Paso County, Texas, we have no such jurisdiction. Defendant advances no reason why that judgment should be denied its usual *res judicata* effect, and none is readily apparent: as a final judgment, it settles not only the issues actually litigated, but also any issues that *could* have been litigated in that proceeding. *Federated Department Stores, Inc. v. Moitie*, —— U.S. ——, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981). Furthermore, as the Supreme Court noted in *Federated Department Stores*, "the res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." —— U.S. ——, 101 S.Ct. 2427 (citations omitted). Nothing in *McCarty* suggests that the Supreme Court therein intended to invalidate, or otherwise render unenforceable, prior valid and subsisting state court judgments. Absent some indication of such an intent, we decline to do so.[2]

1. Badgett subsequently filed a memorandum with this Court in which he expressly relies upon the Supreme Court's decision in *McCarty*.

2. In any event, defendant did not raise this issue in his brief. Indeed, in his original brief defendant argues that military retirement benefits *are* divisible as community property. Appellant's brief at 6, 16. We also note in passing that the 1963 divorce decree which defendant now attacks merely incorporated a property division *agreed to* by the parties.

As the dissent correctly notes, this Court has held that a change in the law occurring between the first and second suits may negate the res judicata effect of a case adjudicating constitutional rights. *See Jackson v. DeSoto Parish School Board*, 585 F.2d 726, 729 (5th Cir. 1978). The reason for this rule is simple: "Faced with changing law, courts hearing questions of constitutional right cannot be limited by res judicata. If they were, the constitution would be applied differently in different locations." *Id.*, quoting *Parnell v. Rapides Parish School Board*, 563 F.2d 180, 185 (5th Cir. 1977). Relying upon this principle, the dissent asserts that "[a] subsequent change in the law should also negate the res judicata effect of a decision where, and to the extent that, (1) the rights adjudicated in that decision do not accrue until after the intervening change in the law has occurred, and (2) the operation of res judicata would result in unequal treatment of similarly situated individuals." (footnote omitted).

Assuming that plaintiff's right to defendant's retirement benefits, although established in the 1963 decree, "accrues" only when each periodic payment is actually due and payable, the dissent's reasoning overlooks the fact that plaintiff simply is not "similarly situated" to individuals whose divorce decrees are rendered after *McCarty*. As noted in the panel opinion of this case, Texas courts are authorized to divide marital property in a "just and right" manner. In making this determination, Texas courts consider several factors, including an ex-spouse's future need for support. 647 F.2d at 554. Whereas pre-*McCarty* divorce courts have considered a spouse's military retirement benefits as community property when dividing the other joint property of the spouses in a "just and right" manner, a post-*McCarty* court will not. Under the dissent's proposed approach, the overall equitable distribution of marital property fashioned by Texas courts in cases decided before *McCarty* would be frustrated, if not destroyed.

For example, assume a $100,000 total community estate, in which a pre-*McCarty* court determined that a "just and right" division called for an award of $50,000 each to the husband and wife. Further assume that the pre-*McCarty* court accomplished this award by equally dividing the husband's military retirement benefits, which had a present value of $50,000, and also by equally dividing the remaining community estate, which likewise had a value of $50,000. Under the pre-*McCarty* decree, each spouse shared equally, $50,000 each, in the court's division.

Under the dissent's proposed approach, however, this division would now be altered dramatically. Whereas the former wife's claim to one-half of the military retirement benefits would, to the extent payable after the effective date of *McCarty*, be unenforceable, the former husband would now possess *all* of the military retirement benefits payable after that date *plus* one-half of the remaining community estate. Consequently, the former husband would now possess approximately *seventy-five* percent of the total community estate, *i. e.*, $75,000 (less one-half of any retirement benefits payable before the effective date of *McCarty*). The former wife would now possess only twenty-five percent of the community estate, *i. e.*, $25,000 (plus one-half of any retirement benefits pay-

Similarly, defendant's argument that 37 U.S.C. § 701(a)[3] evinces a congressional intent that military retirement benefits be exempt from division on divorce as community property is of no avail. For the reasons stated *supra*, this issue is not properly before this Court. Finally, we note that although it might be argued that, after *McCarty*, section 701(a) should be read to prevent "anticipation" of an officer's pay account by assignment, *compare* —— U.S. at ——, 101 S.Ct. at 2739 n.22 *with id.* at ——, 101 S.Ct. at 2746 (Rehnquist, J., dissenting), the district court's order requiring defendant to file an allotment order with the Army providing for the payment directly to plaintiff of her share of defendant's retirement benefits was based not upon section 701(a), but rather upon section 701(d),[4] which specifically authorizes the Secretary to allow a member of the Army or the Air Force to make such allotments "for the support of his relatives, or for any other purpose that the Secretary concerned considers proper." *Id.* As noted in the panel opinion in the present case, the Office of the Judge Advocate General, Department of the Army, informed counsel by letter that the Department of Defense Military Pay and Allowances Entitlements Manual was amended on December 19, 1977 to permit retired members of the military to authorize allotments to former spouses. Absent any argument that the Secretary exceeded his authority in authorizing such allotments, or that the district court's order requiring defendant to execute such an allotment was otherwise improper,[5] we decline to set that order aside.

No member of this panel nor Judge of this Administrative Unit in regular active service having requested that the Court be polled on rehearing en banc (Rule 35, Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 16; Fifth Circuit Judicial Council Resolution of January 14, 1980), the *Suggestion for Rehearing En Banc* is

DENIED.

---

able before the effective date of *McCarty*). Under the dissent's proposed disposition, to a greater or lesser degree, every "just and right" division would be similarly affected.

The dissent's proposed approach, which would enforce divisions of military retirement benefits only to the extent that the benefits were payable before the effective date of *McCarty*, would not place all individuals on an equal footing for yet another reason. Whereas under a divorce decree entered long before *McCarty* the military retirement benefits received by a former wife might be substantial, the benefits which a former wife would receive under a decree entered only a few months prior to *McCarty* would be insignificant, because the former wife would be entitled to share only those benefits actually payable before *McCarty*. Indeed, the length of time between the divorce decree and *McCarty* would become precisely the type of "fortuitous circumstance," *infra* Slip op. at 12079, at ——, that the dissent finds objectionable.

Of course, a post-*McCarty* court will be aware that military retirement benefits henceforth cannot be divided. Presumably, such a court, finding that a $50,000 award to the former wife is essential to a "just and right" division, will allocate a larger share of the divisible community estate to the former wife. The point, however, is that future courts will be able to make such an adjustment, if appropriate. Pre-*McCarty* decrees already are cast.

Rather than place all individuals on an equal footing, the dissent's approach would achieve just the opposite: By denying prior state court decrees the effect of equitably distributing the marital property between the former spouses, the dissent would achieve prospective uniformity at the expense of individuals whose rights were determined in reliance upon a prior interpretation of the applicable law.

3. Section 701(a) provides:

Under regulations prescribed by the Secretary of the Army or the Secretary of the Air Force, as the case may be, a commissioned officer of the Army or the Air Force may transfer or assign his pay account, when due and payable.

4. Section 701(d) provides in part:

The Secretary of the Army or the Secretary of the Air Force, as the case may be, may allow a——

(1) member of the Army or the Air Force

. . . . .

to make allotments from his pay for the support of his relatives, or for any other purpose that the Secretary concerned considers proper.

5. These issues have not been presented, and we do not decide them.

**30**

AINSWORTH, Circuit Judge, dissenting:

This case presents the important question of whether the Supreme Court's recent decision in *McCarty v. McCarty*, —— U.S. ——, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), applies where a state court's judgment dividing military retirement benefits pursuant to state community property laws antedates *McCarty*, but where the right to receive some or all of the benefits so divided does not accrue until after the date of that decision. Because the court's decision today would result in unequal treatment of similarly situated individuals, I would reverse the district court's judgment in part, and hold that plaintiff is entitled to share only those military retirement benefits payable before June 26, 1981.

I joined in the original panel opinion affirming the district court decision to enforce the terms of a 1963 divorce decree awarding plaintiff one-half of defendant's accumulated right under a United States Army retirement benefits program. *Erspan v. Badgett*, 647 F.2d 550 (5th Cir. 1981). Two weeks after that opinion was issued, the Supreme Court held in *McCarty* that federal law precludes a state court from dividing military retired pay pursuant to state community property laws. This court now holds that the 1963 state court judgment granting plaintiff one-half of defendant's military retirement benefits enjoys res judicata effect,[1] even though the legal principle on which that judgment rested has been overruled.

The court correctly observes that, as a general rule, the res judicata consequences of a final, unappealed judgment on the merits are not altered by the fact that the judgment rested on a legal principle subsequently overruled in another case. *Federated Department Stores, Inc. v. Moitie*, ——

U.S. ——, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981). This rule is not, however, inflexible. In *Jackson v. DeSoto Parish School Board*, 585 F.2d 726 (5th Cir. 1978) the Fifth Circuit stated:

It has long been established that res judicata is no defense where, between the first and second suits, there has been an intervening change in the law or modification of significant facts creating new legal conditions. *See, e. g., Commissioner of Internal Revenue v. Sunnen*, 1948, 333 U.S. 591, 599–602, 68 S.Ct. 715, 720–21, 92 L.Ed. 898, 906–08; *State Farm Mutual Automobile Insurance Co. v. Duel*, 1945, 324 U.S. 154, 162, 65 S.Ct. 573, 577, 89 L.Ed. 812, 819. In these cases, the operation of the preclusion doctrines would result in unequal treatment of similarly situated individuals, some of whom have the misfortune to have sought legal redress at an earlier phase of legal developments.

*Id.* at 729.

A subsequent change in the law has been held to negate the res judicata effect of a number of decisions adjudicating constitutional rights. *See, e. g., Jackson v. DeSoto Parish School Board, supra; Parnell v. Rapides Parish School Board*, 563 F.2d 180, 185 (5th Cir. 1977), *cert. denied*, 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978); *Christian v. Jemison*, 303 F.2d 52 (5th Cir.) *cert. denied*, 371 U.S. 920, 83 S.Ct. 287, 9 L.Ed.2d 229 (1962). A subsequent change in the law should also negate the res judicata effect of a decision where, and to the extent that, (1) the rights adjudicated in that decision do not accrue until after the intervening change in the law has occurred, and (2) the operation of res judicata would result in unequal treatment of similarly situated individuals.[2]

---

1. The federal courts must give to a judgment of the court of any state the same full faith and credit that the judgment has "by law or usage" in the court rendition. 28 U.S.C. § 1738 (1970). We are therefore compelled to give to the 1963 judgment of the district court of El Paso, Texas the same res judicata effect in this action as it would have been accorded by the Texas courts. *Clyde v. Hodge*, 413 F.2d 48, 50 (3d Cir. 1969).

Where, as here, there is no Texas law on point, we must make an educated guess as to how the highest court of Texas would rule. *Nobs Chemical, U. S. A., Inc. v. Koppers Co.*, 616 F.2d 212 (5th Cir. 1980).

2. The Supreme Court's decision in *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), although it involved collateral estoppel rather than res

Both circumstances are present here. Many residents of community property states who will receive military retirement benefits after the date of *McCarty* have obtained or will obtain a judgment of divorce. Under the present ruling an essentially fortuitous circumstance—whether their judgment of divorce was entered before or after the date of *McCarty*—will determine whether those individuals may be compelled by state community property laws to pay, in the years following *McCarty*, part of their military retirement benefits to their former spouse. Because such unequal treatment is neither necessitated nor justified by the doctrine of res judicata, I am unable to join in the panel opinion herein.

judicata, rested upon similar considerations. *Sunnen* held that an intervening change in the tax law resulting from a federal court decision precludes the applicability of collateral estoppel. The Court reasoned that if the prior determination were perpetuated as to the party involved in the proceeding, he would be accorded, in the years following the change in law, treatment different from that accorded other taxpayers of the same class. 333 U.S. at 599, 68 S.Ct. at 720.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.